## M. S. HEARD, Administrator, *v.* HEIRS OF WHITEHEAD.

1. EXECUTORS AND ADMINISTRATORS : PETITION TO DECLARE ESTATE INSOI.·- VENT : NOTICE TO PARTIES INTERESTED.—A petition to declare an estate insolvent must state an account of the assets which have come to the hands of the personal representatives, the value of the lands of the deceased, a schedule of the debts and a representation of the insolvency of the estate. The parties interested must be summoned before any decree of the sale of the lands can be made. Rev. Code, 448-9, art. 98.
2. SAME : PETITION TO SELL LANDS UPON INSUFFICIENCY OF PERSONALTY :

Heard, Admr., *v.* Whitehead.

ONE MONTH MUST ELAPSE FROM FILING OF PETITION TO ORDER OF SALE.
—On an application by an executor or administrator to sell the lands of the deceased upon the insufficiency of the personalty to pay the debts, one month must be allowed to elapse from the filing of the petition before the order for the sale can be made.

3. SALES BY EXECUTORS AND ADMINISTRATORS: CONFIRMATION OF, IN DISCRETION OF PROBATE JUDGE.—The confirmation or setting aside of sales by executors and administrators belongs exclusively to the Probate Court, and this court will generally defer to the exercise of its discretion, without regard to the formality of its judgments as exhibited in the record.

ERROR to the Probate Court of Carroll county. Hon. J. S. Johnson, judge.

*A. H. Nelson* for plaintiff in error.

*F. Anderson* for defendant in error.

HARRIS, J., delivered the opinion of the court.

This record presents the question, whether the order of the Probate Court, setting aside the sale of real estate reported for confirmation, was erroneous, under the facts appearing therein.

It appears by the record (if we are to regard all the matters here presented as such, without any bill of exceptions), that at the October term, 1865, of the Probate Court of Carroll county, plaintiff in error exhibited to the court, under oath, an account of the " *assets* " which had come to his hands, and an *imperfect* account of the lands of deceased, a schedule of the debts of the deceased—distinguishing the amount paid, the amount probated, and the amount not probated—without either proof of the *value* of the lands, or any *proof or representation, or* "*report*" of the insolvency of the estate, but *asking* the court to declare the estate insolvent, and to make such orders and decrees as it might deem proper and right.

Thereupon at the same time the court, on its own motion, made the following order: " W. S. Heard, administrator of the estate of N. B. Whitehead, deceased, having filed a schedule of the debts due by said estate, and also a report of the assets in his hands to pay the same, and the court being fully

advised in the premises, doth *consider that said estate be declared insolvent.* It is therefore ordered that the administrator, W. S. Heard, advertise, for *six successive months,* in the *Carroll Conservative,* a newspaper published in the county, to the creditors of the aforesaid decedent, to file and register their claims duly probated, with the clerk of this court, in the register kept by him for that purpose, *on or before the third Monday of November,* 1865 (only one month after the date of said order), or that they will be barred for ever."

There is nothing in this proceeding tending to show the estate insolvent. Neither the quantity nor value of the lands is stated or proved. The amount of the debts is not positively, but only hypothetically stated or known. Neither the administrator nor the court venture to express *the opinion* that the estate *is insolvent,* or that it so appears by proof or otherwise. No order is made for a summons to the heirs or devisees, preparatory to a decree of sale, as directed by art. 98, p. 448–9, Rev. Code, but simply an order for notice to creditors, of *six months,* under art. 101, p. 449, Rev. Code.

It seems clear, therefore, that if this proceeding, commenced on the 16th October, 1865, was originally designed as an incipient step, under art. 98, R. Code, p. 448, to procure an order of sale of all the real estate of decedent, on the ground of *insolvency,* such intention was abandoned at that time.

This will be made still more manifest by an attentive consideration of the subsequent proceedings under which the sale was actually made or attempted.

On the 21st day of November, 1865, the administrator, Heard, filed his petition, in the said Probate Court, in which he represents, *not that the estate is insolvent,* but that "the *personal estate of his intestate is insufficient* to pay the debts of the decedent, which have been duly probated and registered." He refers to the inventory, appraisement, orders of sale, and report thereon, the registry of claims, and the report of the condition of the estate, made at the October term, 1865. He also furnishes a list of the lands of the decedent, and the names of the parties interested therein, in this petition, and concludes

his petition thus : "Now it is submitted, if the lands above described, *or a portion thereof*, shall be sold to satisfy unsatisfied creditors, and that petitioner prays that the same may be done."

The order for *process* recites this allegation of the petition, of the *insufficiency of the personalty* to pay the debts, as the basis of the order.

The *decree of sale* recites that the case came on for final hearing, on the petition, *pro confesso*, and proof; and ·that the court being fully advised in the premises, and it appearing *that it will be necessary to sell the real estate of said decedent to pay his debts*, it is ordered, etc.

There is nothing in this last proceeding even suggesting the idea of insolvency, much less a *report* or *representation* of insolvency by the administrator, or proof of that fact before the court, to satisfy its judgment.

It is therefore clear that this proceeding must be regarded as having been had under art. 88, Rev. Code, p. 445-6, and the period of *one month* between the filing the petition and account and the order of sale, must be allowed to elapse before such order can be made.

But independent of· this view, in the absence of any *special exceptions* to the judgment of the court setting aside these sales, furnishing this court all the facts and circumstances that were or may have been before that court, even if all the proceedings had been regular preparatory to the sale, as shown by the *record*, we should be very reluctant to interfere with the discretion of the Probate Court in matters of this character. Irregularities or the existence of extraneous facts, occurring at or about the time of sale, not formally appearing in the record, or even formally urged before the Probate Court, leading to the sacrifice of the estate and the interest of creditors, as well as heirs or distributees, may have induced the action of the Probate Court here complained of; and, occupying the peculiar position it does in relation to the rights and interests of all these parties, this court would generally defer to the exercise of its discretion in refusing confirmation of these sales, and thereby

protecting these rights and interests by the Probate Court, without regard to the mere formality of its judgments as exhibited by the record.

In the case before us the lands *seem* for the most part, by the report of the administrator, to have been sold at a ruinous sacrifice.   What may have been the facts, what may have appeared to the Probate Court on the application to confirm the report of sales, or what may have operated on the discretion of this court in setting aside their sales by this order, we are not informed.   And in the absence of any exception, taken to that judgment at the time it was made, we are to presume that the court acted rightly.

The only safe and just course to all the parties in interest is to affirm the order and judgment of this court below, and let the administrator *begin anew*, making his petition for the sale of the land belonging to the estate, in conformity to the statute, and obtaining on order of sale as required by law.

Let the judgment be affirmed.